UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

M.P. and A.P., individually and
on behalf of A.P., a minor child with a disability.

                *Plaintiffs*,                Civ. No. 1:21-cv-07439-LGS

                                                            (Oral Argument Requested Via Letter)

THE NEW YORK CITY DEPARTMENT
OF EDUCATION,

                *Defendant*.

------------------------------------------------------------X


# Plaintiffs' Reply In Support of Their Motion for Summary Judgment and In Opposition to Defendant's Cross-Motion for Summary Judgment

# TABLE OF CONTENTS

**Table of Authorities**……………………………………………………………………….…..ii

**Preliminary Statement**………………………………………………………………………1

**Argument**……………………………………………………………………....................2

    I.   Plaintiffs are Entitled to Tuition Reimbursement and Summary Judgment Under the IDEA and the New York Educational Law………………………………………………..................2

        a.   The SRO committed legal error, a fact further highlighted by the DOE's submissions....2

        b.   The SRO is entitled to no deference on legal conclusions and matters outside its specific expertise, and DOE's own case law provides that the SRO receives less deference when new evidence is available to the district court………………………………………......5

        c.   Public policy and equities resoundingly counsel for tuition reimbursement………….....6

    II.  Plaintiffs are Entitled to Compensatory Services in the Alternative..………………………....8

    III. At the Very Least, This Court Should Seek Further Findings……………………………….10

**Conclusion** ……………………………………………………………………….................11

# TABLE OF AUTHORITIES

*A.U. v. N.Y.C. Dep't of Educ.*, No. 15 Civ. 6777, 2016 WL 4508454 (S.D.N.Y. Aug. 24, 2016) (Schofield, J.) ……………………………………………………………………………………………..2, 4

*Bd. of Educ. of Wappinger's Cent. Sch. Dist. v. D.M.*, No. 19 CV 1730, 2020 WL 508845 (S.D.N.Y. Jan. 30, 2020) …………………………………………………………………………………………….4

*D.B. & M.C. v. NYC Dep't of Educ.*, 966 F. Supp 2d 315 (S.D.N.Y. 2013) ……………………….…7

*Florence City School District Four v. Carter ex rel. Carter*, 510 U.S. 7 (1993) …………………………....7

*G.B. v. N.Y.C. Dep't of Educ.*, 145 F. Supp. 3d 230 (S.D.N.Y. 2015)…………………………….….5

*Grim v. Rhinebeck Cent. Sch. Dist.,* 346 F.3d 377 (2d Cir. 2003)…………………………….…6, 7

*J.E. v. N.Y.C. Dep't of Educ.*, 229 F. Supp. 3d 223 (S.D.N.Y. 2017) ………………..………...5, 8

*L.O. v. New York City Dep't of Educ.*, 822 F.3d 95 (2d Cir. 2016)………………...……………...8, 10

*M.B. v. Minisink Valley,* 523 F. App'x 76 (2d Cir. 2013)…………………………..……………………….6

*R.E. v. New York City Dept. of Educ.*, 694 F.3d 167 (2d Cir. 2012) )…………………..………………....5

*Silverman, for & on Behalf of N.L.R.B. v. Ehrlich Beer Corp.*, 687 F. Supp. 67 (S.D.N.Y. 1987)…………....9

*Ward v. Bd. of Educ. of the Enlarged City Sch. Dist. of Middletown*, 568 F. App'x 18 (2d Cir. 2014)………......7

**PRELIMINARY STATEMENT**

DOE's submission only further highlights all the reasons for which this Court should grant summary judgment to Plaintiffs. Despite its recitation of the statutory framework and beside-the-point quibbles like the importance of playing team volleyball during an unprecedented global pandemic, the DOE does not deny that it failed to raise any of the challenges to A.P.'s placement and progress that it now relies on; nor does it deny that both the SRO and IHO found the remote placement appropriate for the immediately preceding pandemic school year, a defeat that the DOE had aggressively cross-appealed to the SRO but now neither disputes nor appeals. Moreover, while pushing this Court to look beyond the substantial progress that A.P. has made to the totality of the circumstances, the DOE cannot identify a single meaningful fact counseling against tuition funding. Indeed, the DOE cites not a single case where, as here, both the IHO and SRO unqualifiedly found that the equities favored the indigent, immigrant parents, who at all times did everything to put the DOE on notice of their child's extensive needs (another finding that the DOE neither disputes nor appeals). Instead, the DOE merely calls upon this Court to rely on deference alone and rubber stamp a poorly reasoned decision with wide-ranging public policy ramifications. The DOE has simply chosen to ignore the clear law Plaintiffs set out in their opening brief, such as the fact that administrative agencies receive no deference on questions of law, particularly those that fall outside their expertise; that private placements need not be perfect to warrant tuition reimbursement and that the IDEA does not require parents to subject their children to severe health risks just to receive funding; and that basic principles of preservation and waiver apply to the DOE as much as to any other party that litigates before this Court.

In light of the dearth of support the DOE has marshaled, one cannot help but wonder why the DOE is defending this case so vehemently, and what it intends to do in similar cases should it

1

receive a favorable outcome in this one. Indeed, the DOE's submission reflects a dangerous, willful disregard for all of the public policy implications at issue. Ruling for the DOE's position here would signal to all families in this jurisdiction that in a global pandemic, indigent, immigrant parents who have next to no access to educational or medical resources need to anticipate all potential challenges and arguments—even those that neither the DOE nor the IHO bother to raise—and that they need to exhaust all possibilities and placements, just to avail their children to the education they direly need. The tuition dollars at issue here are a mere pittance in the scope of the DOE's budget, but to A.P. and her family, they are the difference between attaining a somewhat independent future or remaining forever limited by the socioeconomic and medical circumstances of her family. Endorsing the DOE's position here would simply exacerbate what the world has already seen: that when society is in unprecedented crisis, those with resources hold onto more, while the already underprivileged suffer the brunt.

## ARGUMENT

I. **Plaintiffs are Entitled to Tuition Reimbursement Under the IDEA and the New York Educational Law**

   a. **The SRO committed legal error, a fact further highlighted by the DOE's submissions.**

If anything, the DOE's submissions further emphasize the fact that the SRO committed legal error and reached the wrong conclusion of law, neither of which is entitled to deference from this Court. *A.U. v. N.Y.C. Dep't of Educ.*, No. 15 Civ. 6777, 2016 WL 4508454, at *8 (S.D.N.Y. Aug. 24, 2016) (Schofield, J.); *see also* ECF No. 28 ("Pls. Op. Br.") at 4. For instance, the DOE does not deny that it failed to challenge the appropriateness of Keswell's remote programming before the IHO and it does not deny that it failed to challenge A.P.'s specific instructional program or her progress under that program. Nor does it deny that both the SRO and IHO deemed the program appropriate and

2

sufficient for the immediately preceding school year, only for the SRO to deem the program inappropriate for the 2020-2021 school year in the same decision, even though that subsequent program was more robust, with increased hours of instruction.

Even in light of these dispositive concessions, the DOE nevertheless insists that the burden was on the (indigent, non-English-speaking) parents to (1) in June 2020, predict the future and read the DOE's mind by anticipating that that the DOE would be making challenges it never expressed until this appeal; (2) present full evidence on A.P.'s progress and instruction for the entire 2020-2021 school year at an uncontested hearing in November 2020, mere months into that same school year; (3) explore other placements for their daughter even though there was no reason to do so, as she was flourishing in her current placement, which both the SRO and IHO[1] had fully approved for the immediately preceding pandemic school year; while (4) navigating their own debilitating illness during an unprecedented global pandemic that posed particular risks to both A.P. and her younger sister, given their severe disabilities and the family's socioeconomic status.

And rather than meaningfully support its position, the DOE cherry-picks beside-the-point details such as A.P.'s limited ability to work on "group leisure skills" such as volleyball through remote instruction—conveniently ignoring the question whether any child, at Keswell or elsewhere, in person or not, mainstream or with disabilities, was engaging in group sports at all given the severe threat that COVID-19 still posed throughout the 2020-2021 school year.[2] ECF No. 35-1 ("DOE Opp.") at 23. And continuing ignorance of the facts of this case, the DOE argues that A.P. did not receive adequate "small group instruction," even though her particular disabilities and needs indisputably demand one-to-one instruction. *Id.* at 14. What's more, the DOE points out that one June 2021 progress field

---

[1] And indeed the DOE, through its own decision not to appeal the issue to this day.

[2] It is also worth noting that sports such as volleyball would have been particularly dangerous for children like A.P., whose disabilities gave her a tendency to put non-food objects in her mouth and made it near impossible for her to keep a mask on.

3

pertaining to toilet training was accidentally left blank, even though the record clearly establishes that A.P. became toilet trained for the very first time during the very 2020-2021 remote program that the DOE now challenges. *See* Pls.' Op. Br. Ex. A at 24.

The DOE's trivial objections elide the far more critical fact that Keswell's specifically tailored remote program allowed A.P. to make monumental gains during the 2020-2021 school year, even in the midst of the highest peak in COVID-19 deaths: she showed unprecedented mastery of functional tasks and in activities of daily living, met 80 objectives for the school year (far more than she had for the previous year, for which the placement was deemed appropriate), became toilet trained, and showed marked universal decline in all maladaptive behaviors, such as, for instance, from a previous 92 instances of head-hitting to a mere 3 instances. *See* Pls. Op. Br. at 3 (providing further details). Rather than acknowledging its own clear waivers or any of these established facts on A.P.'s educational support and development, the DOE now maintains that the parents were supposed to read the tea leaves and jump through hoops to either (1) present more evidence on arguments not presented at the uncontested hearing or (2) find another, "actually" appropriate remote placement. All this simply because some non-obligatory in-person instruction became available during the 2020-2021 school year, and because the IHO somehow reached its decision entirely based on reasoning never discussed at the uncontested hearing. *See* Pls. Op. Br. at 8.

This runs counter to the case law Plaintiffs presented in their opening brief, in which this Court made clear that "the test for the parents' private placement is that it is appropriate, and not that it is perfect." *A.U.*, 2016 WL 4508454, at *7 (reversing the SRO's decision and granting summary judgment to parents where the private placement was appropriate for 12-month student with autism and the equities favored the reimbursement) (quoting *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 837 (2d Cir. 2014)); *accord Bd. of Educ. of Wappinger's Cent. Sch. Dist. v.* D.M., No. 19 CV 1730, 2020 WL 508845 (S.D.N.Y. Jan. 30, 2020) (granting summary judgment to parents despite scant record

evidence and the placement not being "ideal" because there was evidence of educational benefit). The DOE spends pages upon pages regurgitating the established statutory framework and yet completely ignores that well-reasoned precedent from this very Court, as well as the principles of justice, public policy, and good governance that undergird it. The DOE also sidesteps the good law providing that parents need only show that the placement is "***reasonably calculated*** to enable the child to receive educational benefits," not that it "furnishes every special service necessary to maximize their child's potential.'" *J.E. v. N.Y.C. Dep't of Educ.*, 229 F. Supp. 3d 223, 238 (S.D.N.Y. 2017) (quoting *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 364 (2d Cir. 2006))(emphasis added). Nor does the DOE acknowledge or offer any meaningful response to the case law providing that parents need not subject their child to serious health, safety, or medical risks just to demonstrate entitlement to tuition funding. *G.B. v. N.Y.C. Dep't of Educ.*, 145 F. Supp. 3d 230, 239-40, 254, 258 (S.D.N.Y. 2015).

For good reason: the SRO's decision committed clear legal error. And to defend it, the DOE has had to ignore basic legal principles, which Plaintiffs have already set out in their opening brief.

    **b. The SRO is entitled to no deference on legal conclusions and matters outside its specific expertise, and DOE's own case law provides that the SRO receives less deference when new evidence is available to the district court**

As Plaintiffs explained in their opening brief, the SRO is entitled to no deference on questions of law and can receive less deference based on the quality of the decision and the scope of its expertise. Pls.' Op. Br. 4-5. In *R.E. v. New York City Dept. of Educ.*, 694 F.3d 167, 189 (2d Cir. 2012)—the seminal decision cited in Plaintiffs' opening papers (Pls.' Op. Br. 5) but somehow entirely omitted from DOE's memorandum—the Second Circuit established that while federal judges "must defer to the SRO's decision on matters requiring educational expertise," the level of deference depends "on the quality of that opinion." The DOE's case law supports that position. While the DOE hints at some unidentified reason this Court should not entertain the newly available evidence at all, it cites case law that further emphasizes that (1) this Court is entitled to review new evidence and (2) less deference is

5

required when it engages in review of that evidence, particularly with regard to educational progress.[3] The DOE cites *Grim v. Rhinebeck Central School District,* 346 F.3d 377 (2d Cir. 2003) and *M.B. v. Minisink Valley,* 523 F. App'x 76 (2d Cir. 2013), each of which establishes that the district court can consider new evidence presented to it on appeal. *Grim*, 346 F.3d at 380; *M.B.*, 523 F. App'x at 77. In fact, *M.B.* goes so far as to expressly provide that "***less deference is required*** by the district court when it 'has before it additional evidence that was not considered by the state agency' and when considering 'determinations concerning whether there have been objective indications of progress.'" *Id.* (quoting *M.H.*, 685 F.3d at 244) (emphasis added).

In this case, the DOE does not urge that this Court accord deference to the SRO's judgment on matters of educational policy, but rather on unprecedented issues of public health, law, and COVID-19—areas in which this Court has just as much expertise, if not more. To the extent that the SRO decision at issue contains any straightforward assessments of sound educational policy, they are eclipsed by the previously unavailable and materially unassailable evidence that A.P. made significant, unprecedented progress over the 2020-2021 school year.

Both parties' cite precedent holds that in situations like the one, where there is new evidence of progress and a determination pertaining to an area well outside educational policy—that is, applying established law to unprecedented circumstances created by a global pandemic—the district court need not accord the same level of deference the SRO typically enjoys.

c. **Public policy and equities resoundingly counsel for tuition reimbursement.**

The DOE emphasizes that A.P.'s demonstrated, substantial progress does not on its own mandate an award of tuition funding because this Court must also look to the totality of the

---

[3] Despite being aware of these cases, the DOE still faults A.P.'s parents for failing to present the SRO with a progress report that had not yet been prepared at the time, and then suggests that there is some obscure reason for this Court not to consider it, without actually presenting that reason. DOE Opp. 18, 20 ("Even if the Court was to consider this document…").

circumstances (DOE Opp. 21). Plaintiffs agree: both A.P.'s progress and the totality of the circumstances, including the equities, point to tuition reimbursement. The DOE conveniently cites no cases that align with the totality of the circumstances here. Both the IHO and SRO unqualifiedly found that the equities favored the parents, a finding that the DOE neither disputes nor appeals. The record demonstrates that the parents did everything right, despite their indigency, language barriers, and struggles with COVID-19, to put the DOE on notice of their daughter's extensive educational needs. Indeed, for all its spilled ink on the importance of playing team sports during a pandemic, the DOE identifies no meaningful reason, under the totality of the circumstances test, to deprive this family of tuition reimbursement. Nor does it cite a single case that addresses the relevant issues or present analogous facts. *See, e.g.*, *Grim*, 346 F.3d 377, 380 (2d Cir. 2003) (focusing on the adequacy of an IEP, but no IEP was ever issued for A.P.); *D.B. & M.C. v. NYC Dep't of Educ.*, 966 F. Supp 2d 315, 338-39 (S.D.N.Y. 2013) (presenting minimal record evidence on instructional program and equities that did not favor the parents); *Ward v. Bd. Of Educ. of the Enlarged City Sch. Dist. of Middletown*, 568 F. App'x 18 (2d Cir. 2014) (unlike the ample details provided by the parents in their opening brief here, the parents in that case failed to identify a single fact that the SRO ignored or what more evidence it could have sought).

It is curious that the DOE has dug its heels into this particular case, despite all of the equities and its own unpreserved challenges. The Supreme Court ruled in *Florence City School District Four v. Carter ex rel. Carter*, 510 U.S. 7, 15 (1993) that the IDEA mandates that "public educational authorities who want to avoid reimbursing parents for the private education of a disabled child can do one of two things: give the child a free appropriate public education in a public setting, or place the child in an appropriate private setting of the State's choice." Where, as here, the DOE has continuously failed to do either, "it would be inequitable to reward [the DOE] for its admitted failure to comply with

7

IDEA." *J.E.,* 229 F. Supp. 3d at 240 (quoting *M.V. v. Shenendehowa Cent. Sch. Dist.*, No. 06 Civ. 0571, 2008 WL 53101, at *5 (N.D.N.Y. Jan. 2, 2008)).

Ruling in favor of the DOE here would create untenable results for public policy: it would hold that struggling families need to anticipate the full slate of challenges to their placement, raised or waived; and that even in the midst of the worst public health crisis in living memory, those families need to further anticipate that even a placement previously deemed appropriate is not sufficient to merit prospective funding. Hearing offices and courts alike, meanwhile, will struggle with judicial economy as litigants proffer evidence and testimony in response to arguments never raised and challenges not at issue, just to ensure that children with severe disabilities receive the education they direly need and to which they are clearly entitled by law. One cannot help but wonder why the DOE is even wasting this Court's resources with such a stance—one so untenable that the DOE itself can find nary precedent nor meaningful fact in support.

## II. Plaintiffs are Entitled to Compensatory Services in the Alternative.

In their initial due process complaint before the IHO, Plaintiffs requested compensatory services as an alternative to tuition reimbursement. R. 0301. The only argument the DOE offers for dismissal of this claim is that the parents failed to offer a basis for this request at the hearing. But Second Circuit case law establishes that such relief is well within this Court's "broad discretion in fashioning an award," which is "restrained only by the Supreme Court's directive that 'the relief is to be appropriate in light of the purpose of the [IDEA].'" *L.O. v. New York City Dep't of Educ.*, 822 F.3d 95, 125 (2d Cir. 2016) (quoting *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369 (1985)). "[E]quitable considerations are relevant in fashioning relief in any IDEA action," and "a court may award various forms of retroactive and prospective equitable relief, including reimbursement of tuition, compensatory education, and other declaratory and injunctive remedies." *Id.* (citing *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 454 (2d Cir. 2015)). Thus, should this Court affirm

8

the denial of tuition funding here, Plaintiffs are nevertheless entitled to compensatory services for all the same reasons set forth this brief and in the opening papers. *Id.*

In the administrative proceedings, the DOE led the parents to believe that the parties were entering an uncontested hearing entailing no challenge to the appropriateness of placement for tuition reimbursement. Pls.' Op. Br. 7-10. As such, the parents did not bother to make a showing on its alternative argument. *Id.* Nor, for that matter, did they make the further showing that they would have had the hearing been contested, or had DOE so much as attempted to preserve any single one of the arguments it raises now. *Id.* If the DOE insists on applying the rules of waiver to the parents, then it must allow itself to be held to at least a similar standard, if not more a stringent one. The parents cannot say it better than courts in this district already have: "An attorney in the employ of the government is not on the same footing as a private attorney. He or she has the august majesty of the sovereign behind his or her every utterance; the economic power in the hands of some individual government lawyers can wreak total devastation on the average citizen," and even more on underprivileged children with severe disabilities such as A.P. *Silverman, for & on Behalf of N.L.R.B. v. Ehrlich Beer Corp.*, 687 F. Supp. 67, 69–70 (S.D.N.Y. 1987). It is only fitting that, "as a result, the attorney representing the government must be held to a higher standard than that of the ordinary lawyer." *Id.* at 70.

The DOE cannot now reasonably and in good faith claim that it should avoid the same principles of waiver it seeks to enforce on the parents for the compensatory services claim. If principles of waiver and preservation apply here, none of the DOE's challenges to reimbursement merits consideration, in which case the parents would have no need for compensatory services because they would be entitled to tuition coverage. If, on the other hand, the DOE's late-stage challenges are permissible, then so too should the parents' alternative claim to compensatory services, which was at

9

least raised and preserved at the due process complaint before the IHO, long before the DOE ever came up with any of the arguments that it now dares to parades before this Court.

**III.     At the Very Least, This Court Should Seek Further Findings.**

The law and facts here establish Plaintiffs' entitlement to summary judgment. But should this Court have any doubt, it should at the very least proceed to further fact-finding or remand for further administrative proceedings before making a ruling for DOE. *See L.O.*, 822 F.3d at 125 (remanding for further findings on issues never reached or discussed at hearing).

## CONCLUSION

For the forgoing reasons, this Court should grant Plaintiffs' motion for summary judgment on their claims under the IDEA and New York Educational Law and deny Defendant's cross-motion.

DATED: February 24, 2022

Respectfully submitted,

/s/ Qian Julie Wang
Qian Julie Wang, Esq.
Marc A. Gottlieb, Esq.

GOTTLIEB & WANG LLP
*Attorneys for Plaintiff*
195 Montague Street, 14th Floor
Brooklyn Heights, NY 11201
Tel: 646.820.8506
QianJulie@GottliebFirm.com

*Counsel for Plaintiffs*