UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
M.P., et al.,                                               :
                                    Plaintiffs,             :          21 Civ. 7439 (LGS)
                                                            :
                    -against-                               :          **OPINION & ORDER**
                                                            :
THE NEW YORK CITY DEPARTMENT OF                             :
EDUCATION,                                                  :
                                    Defendant.              :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

Plaintiffs M.P. and A.P., individually and on behalf of A.P., bring this action against the

New York City Department of Education ("DOE") pursuant to the Individuals with Disabilities

Education Act ("IDEA"), 20 U.S.C. § 1400 et seq.  Plaintiffs seek review of the May 6, 2021,

decision of the New York State Review Officer ("SRO Decision") reversing the portion of the

January 8, 2021, decision of the Impartial Hearing Officer ("IHO Decision"), which found that

the private school placement was an appropriate placement for A.P. for the 2020-21 school year.

The parties cross-moved for summary judgment.  For the reasons below, Defendant's motion is

denied, and Plaintiffs' motion is granted in part.

## I.    STATUTORY FRAMEWORK

The IDEA mandates that states receiving federal special education funding provide

disabled children with a free appropriate public education ("FAPE").  20 U.S.C. §

1412(a)(1)(A); *Bd. of Educ. of Yorktown Cent. Sch. Dist. v. C.S.*, 990 F.3d 152, 155 (2d Cir.

2021).  "The IDEA also requires that school districts create an individualized education program

("IEP") for each qualifying child."  *W.A. v. Hendrick Hudson Cent. Sch. Dist.*, 927 F.3d 126, 133

(2d Cir. 2019).  An IEP is a "written statement that sets out the child's present educational

performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *Id.* (internal quotation marks omitted).

If a parent believes that the DOE has failed to provide a FAPE to his or her child, the parent "may enroll the child in a private school at their own financial risk and seek retroactive reimbursement from the school district for the cost of the private school." *Id.*  To seek reimbursement, the parent must file a due process complaint, which triggers administrative proceedings beginning with a hearing before an Impartial Hearing Officer ("IHO"). *M.O. v. N.Y.C. Dep't of Educ.*, 793 F.3d 236, 239 (2d Cir. 2015).  The IHO hearing is governed by the three-part *Burlington/Carter* test, as construed by New York Education Law § 4404(1)(c): "(1) the DOE must establish that the student's IEP actually provided a FAPE; should the DOE fail to meet that burden, the parents are entitled to reimbursement if (2) they establish that their unilateral placement was appropriate and (3) the equities favor them." *M.W. ex rel. S.W. v. N.Y.C. Dep't. of Educ.*, 725 F.3d 131, 135 (2d Cir. 2013).

An IHO's decision may be appealed to a State Review Officer ("SRO"). *See* N.Y. Educ. Law § 4404(1)(c); *W.A.*, 927 F.3d at 133.  The SRO "shall review and may modify . . . any determination of the impartial hearing officer . . ." N.Y. Educ. Law § 4404(2).  An SRO's decision is the final administrative decision, but "[t]he IDEA permits a dissatisfied party to challenge an SRO's decision in state or federal court." *C.S.*, 990 F.3d at 164 (citing 20 U.S.C. § 1415(i)(2)(A)).

## II.     BACKGROUND

### A. A.P.'s Educational History

The following facts are taken from the parties' joint statement of undisputed facts. Plaintiff A.P. is an 11-year-old girl, who, in the school year at issue, 2020-2021, was classified by Defendant as a student with Autism.  A.P. presents with significant language, communication, socialization and behavioral issues.  A.P. has a history of engaging in inappropriate self-touching, physically aggressive and self-injurious behaviors, self-stimulatory and impulsive behaviors, sensory issues, non-contextual vocalizations, tantrums, fleeing from classrooms and pica, the consumption of non-food objects.  A.P. presents with global delays in all areas of functioning: cognitive, academic, communication, socio-emotional, behavioral and activities of daily living ("ADL").  A.P.'s last IEP recommended that she be enrolled in a state-approved non-public school for students with special education needs.  In September 2019, A.P. transferred from Manhattan Star Academy to Keswell, a private school for children with special needs, and attended Keswell for the 2019-2020 and 2020-2021 school years.

On March 16, 2020, Keswell closed for the start of the State-mandated COVID-19 quarantine, resuming with remote instruction on March 23, 2020.  Thereafter, Keswell issued a remote learning program description, elaborating on the modifications it had adopted to facilitate the transition from in-person to remote video instruction.  In early April 2020, M.P., A.P.'s mother and primary caregiver, contracted the COVID-19 virus.  M.P., who has affirmed that she has a number of pre-existing conditions, became very ill and was bedridden for several weeks with severe symptoms.  M.P.'s husband and A.P.'s father also contracted the COVID-19 virus in April 2020 and was similarly bedridden due to the virus.  M.P. attests that she did not set foot outside of her apartment until February 2021.  She further attests that she was able to leave her

bed after three weeks but was still suffering from severe symptoms.  During the parents' period of illness, it was extremely difficult for them to attend to and supervise A.P.'s video instruction. A.P. also has a younger sister, S.P., who presents with a similar level of special needs and requires supervision throughout the day.  M.P. was able to supervise the education of her special needs children remotely by arranging for S.P. to attend remote classes in the morning and for A.P. to attend her remote classes in the afternoon.  A.P. made significant progress over the 2019-2020 school year.  The areas of community skills, social and leisure, and ADL skills remained a challenge for A.P., but she nevertheless made progress in those areas.

A.P. attended her remote classes at Keswell continuously throughout the spring, summer, and fall of 2020.  Plaintiffs and Keswell jointly determined that A.P. should not take summer vacations because an interruption in her studies would place her at risk of substantial regression. Keswell drew little distinction between the end of the 2019-2020 school year and the beginning of 2020-2021; Keswell's tuition affidavits date the end of the 2019-2020 year as August 16, 2020 and the start of the 2020-2021 school year as July 6, 2020.

On June 10, 2020, Plaintiffs timely provided the DOE a ten-day notice letter that they would be re-enrolling A.P. at Keswell for the 2020-2021 school year and seeking funding for A.P.'s tuition.  M.P. attests that due to her experience with the COVID-19 virus, she was extremely fearful of allowing A.P. and her sister S.P. to return to in-person instruction in the fall of 2020.  At that time, there was no information on when and whether vaccines would become available, and much less insight than there is now on how the virus is transmitted and affects the human body.  Members of the special needs community postulated a potential link between COVID-19, Kawasaki syndrome and the increased mortality of COVID-19 for children on the Autism spectrum.  M.P. was concerned about A.P. contracting the virus.  Plaintiffs, in

consultation with Keswell, decided it would be better for A.P. to remain at home for the entirety of the 2020-2021 school year.

On June 12, 2020, Keswell convened a meeting of seven staff members to develop an IEP, a behavior reduction plan and sets of annual goals for speech and language therapy and occupational therapy for A.P. for the 2020-2021 school year.  The IEP embraced six domains with 38 long-term objectives, which were further broken down into 163 short-term objectives. The behavior reduction plan defined twelve classes of maladaptive behaviors, ranging from tantrums to mouthing ("defined as putting non-edible objects on her lips or in her mouth") and detailed preventative strategies, redirections and interventions, and data collection criteria for each of them.  The speech language therapy goals identified five domains and adopted fifteen long-term objectives and twenty-six short-term objectives; the occupational therapy goals identified four domains and adopted twenty-six long-term objectives.

On September 4, 2020, Governor Andrew Cuomo issued Executive Order No. 2020.60, authorizing schools to reopen for in-person instruction.  Shortly thereafter, Keswell resumed in-person instruction for the 2020-2021 school year, with twenty-two students returning for in-person instruction and five students continuing with remote instruction, including A.P.  In a testimonial affidavit dated October 2020, Tara Swietek, associate director of Keswell's lower school, reported that, since July 2020, A.P. had achieved 33 short-term objectives on an internal IEP prepared by Keswell.  In 2020, pursuant to the IDEA, Plaintiffs initiated administrative proceedings to seek funding for A.P.'s education at Manhattan Star and Keswell.  Plaintiffs filed consolidated due process complaints for the 2019-2020 and the 2020-2021 school years.  Only the 2020-2021 school year is at issue on the instant motions.

### B. IHO Hearing and Decision

In November 2020, IHO Rona Feinberg convened an impartial hearing.[1]  At the hearing, Plaintiffs presented documentary exhibits and called Swietek to testify.  The DOE did not present a case and declined the IHO's invitation to make opening and closing arguments, but did cross-examine Swietek.

Swietek testified that, from September 2019 to March 2020, Keswell provided A.P. with eight hours of learning each day with one-to-one instruction targeted to her academic and behavioral needs.  A.P. received speech-language therapy, occupational therapy, and applied behavioral analysis ("ABA") therapy that incorporated academics.  Swietek testified that A.P. progressed during this period.  Swietek further testified to Keswell's remote program during the State-ordered quarantine, which began on March 23, 2020 and ended in September 2020.  The teleconferencing included a daily schedule of four thirty-minute live Zoom sessions conducted with the student and an adult in the household, with two members of Keswell staff.  Four days a week, A.P. had two ABA sessions, one speech-language therapy session, and one occupational therapy session.  On the day A.P. did not have occupational therapy, she had three ABA sessions, each lasting thirty minutes.  Additional assignments and videos were sent home for the remainder of the school day.  Swietek also testified that Keswell was able to provide M.P. with a Spanish translator during the remote live sessions.  Swietek testified that, during these sessions, the Keswell teachers took attendance and recorded behavioral data in real time.

Swietek testified that for the 2020-2021 school year, A.P. was receiving six thirty-minute sessions per day of one-to-one online instruction that included speech therapy, occupational

---

[1] As part of the administrative proceedings, Plaintiffs also sought funding for A.P.'s education at Manhattan Star Academy for the summer of 2019, which is not at issue in this appeal.

therapy, and ABA.  While Keswell was able to provide a Spanish translator for M.P. when the entire school was remote, Swietek testified that Keswell could not consistently provide M.P. with a translator once the school had reopened for in-person instruction.  Swietek testified that M.P. was able to communicate in English during the live sessions and, if she required any translation, that was done over email.  Additionally, Swietek testified that Keswell could not provide A.P. with additional morning sessions because M.P. had to tend to A.P.'s younger sister in the morning, and that it was "absolutely necessary" for M.P. to be present.  On cross-examination, counsel for the DOE asked Swietek, "Is it safe to say that nothing has changed [in terms of A.P.'s programming] from March of 2020 to today?" to which she responded that "[A.P.] was receiving four sessions, and they've now increased to six."  On cross-examination, Swietek also explained that, if A.P. had attended instruction in person, she would have been in school for the entire day.  A.P.'s instruction was conducted on a one-to-one basis whether it was in-person or remote instruction.

Following Swietek's testimony, IHO Feinberg asked Plaintiffs' counsel if M.P. would be testifying.  Plaintiffs' counsel asked IHO Feinberg if she had any questions or issues she would like Plaintiffs to address.  IHO Feinberg said no, and the DOE provided no comment.

IHO Feinberg issued her Findings of Fact and Decision, dated January 8, 2021.  She determined that the DOE had failed to make any showing that it had offered A.P. a FAPE for either the 2019-2020 or 2020-2021 school years.  IHO Feinberg concluded that Keswell had provided A.P. with "educational instruction specially designed to meet her unique needs" and "supported by such services as were, and are, necessary to permit the student to benefit from instruction."  IHO Feinberg further found that, pursuant to 20 U.S.C. § 1415(a)(10(C)(iii), there was "no evidence" that Plaintiffs had failed to cooperate with the Committee on Special

Education "in any way," and that "the equities in the case favor the [P]arent."  IHO Feinberg

awarded Plaintiffs less than 50% of the tuition amount requested because "the speech-language

therapy, occupational therapy and ABA sessions provided to her on live remote sessions

addressed her needs to a limited extent."  The IHO reasoned that, prior to the State-ordered

quarantine, A.P. had been in school eight hours each day, from 8:45am to 4:45pm, and received

instruction utilizing ABA, speech language therapy, and occupational therapy on a one-to-one

basis.  IHO Feinberg stated that A.P. requires this 1:1 teaching throughout the day to "regulate

her behaviors and enable her to maintain focus so that she can access learning."  IHO Feinberg

found that, for the period of March 16, 2020 to the end of August 2020, A.P. had received remote

learning for only two hours of what is a typical eight-hour school day and that such "was a

significant reduction in service."  Accordingly, the IHO found that, for the 2019-2020 school

year, Plaintiffs were entitled to a tuition payment of 2/8 of the daily tuition, based on the 2019-

2020 yearly tuition of $133,084.  For July and August, 2020, the IHO found that Plaintiffs were

entitled to 2/8 the daily rate based on the 2020-2021 yearly tuition of $164,200.  For the balance

of the 2020-2021 school-year, IHO Feinberg found that, as A.P. received "three hours of remote

learning per day while her classmates attend Keswell in person for an eight-hour school-day,"

Plaintiffs were entitled to 3/8 of the daily rate of the 2020-2021 yearly tuition of $164,200.  The

IHO reasoned, "While it may be that the [S]tudent only had the ability to withstand two hours of

instruction and that the two hours of instruction may have enabled her to make limited

progress," "the [P]arent is not entitled to have full tuition paid for this time."

### C. SRO Appeal and Decision

Plaintiffs timely appealed the 2020-2021 decision to the SRO in March 2021.  The DOE

filed its cross-appeal on the grant of tuition reimbursement.  On May 6, 2021, SRO Steven

Krolak issued a decision, agreeing with the IHO's findings on the first and third prongs of the *Burlington/Carter* standard, *supra*, specifically that the DOE had denied A.P. a FAPE for the 2020-2021 school year and that the equities of the case supported Plaintiffs' claim for tuition. *See M.O.*, 793 F.3d at 239.

As to the second prong of the *Burlington/Carter* standard -- *i.e.,* the appropriateness of the unilateral placement -- the SRO disagreed with the IHO.  For the 2019-2020 school year, the SRO awarded Plaintiffs full reimbursement for A.P.'s tuition at both Manhattan Star and Keswell, including from March 23, 2020, to August 16, 2020, when A.P. received remote instruction.  No party challenges this determination, and Defendant has since processed these tuition payments.

As to the 2020-2021 school year, the SRO denied any tuition award, finding that Plaintiffs had failed to meet their burden of showing that Keswell had addressed A.P.'s special education needs.  In his decision, the SRO concluded that, when Keswell reopened for in-person instruction in September 2020, A.P. had remained in remote learning at her parents' election, and that Plaintiffs were "required to demonstrate at the impartial hearing that the instruction and related services that were delivered remotely to the student constituted specialized instruction that addressed the student's unique needs under the Burlington Carter standard."

The SRO assessed A.P.'s needs and progress and found that, as of June 2020, A.P. had demonstrated consistent progress with her pre-academic skills but was "at times" challenged by skills involving the use of objects due to her "strong impulse to engage in non-contextual hand movements with the objects."  Continuing his review of Keswell's year-end progress report for 2019-2020, the SRO found that A.P. continued to demonstrate social/emotional deficits and several maladaptive behaviors that impeded her ability to acquire new skills.  Some of these

maladaptive behaviors include head hitting, biting, hair pulling, tantrums, aggression, dropping

to the floor, etc.  The SRO reviewed A.P.'s June 2020 progress report and noted that A.P.

continued to struggle with accepting instructions and redirections, as well as participating in

group activities. The SRO noted that, per the June 2020 progress report, A.P. did not go into the

community due to her level of self-directed behaviors and that the June 2020 progress report

further suggested that A.P. was demonstrating a decreased tolerance when instructors would

point at an object for her to identify.  The SRO further noted that A.P.'s related services were

reduced from 45-minute sessions to 30-minute sessions in remote learning.

> The SRO reasoned:
>
> Although the Keswell associate director briefly testified that the program offered
> to the student by Keswell was appropriate, she also testified that the student
> required "full adult support . . .throughout the day," "direct instruction to practice
> and utilize replacement strategies," and "continuous, full-day 1:1 instruction to
> acquire maladaptive behaviors."  Considering this testimony with the fact that the
> student would have ordinarily received (and did receive during the pre-pandemic
> portion of the 2019-2020 school year) eight hours of instruction and related services
> when she attended an in-person program at Keswell, the SRO found that it was
> difficult to envision, without further evidence, how the remote program was
> appropriate for the student.

As to the assignments and videos that were sent home for the remainder of the school day, the

SRO found the record "devoid of any testimonial or documentary evidence concerning the

content of the assignments or videos, how the students accessed these materials, or whether the

student was assessed with respect to her completion of any assignment or engagement with

videos."  The SRO also stated that the data Keswell staff collected throughout A.P.'s live

sessions were not entered into evidence at the impartial hearing on November 13, 2020.  The

data were not entered because Keswell's first progress report for the year was not scheduled to

be prepared until December 2020 and the DOE did not present a case at the hearing.

The SRO acknowledged that A.P. met 33 short-term objectives on Keswell's IEP, primarily within receptive, expressive and academic domains, according to a testimonial affidavit prepared on October 29, 2020; he also noted that community skills, social and leisure, ADL skills, and behavioral skills continued to be a challenge for A.P. but that she "was nevertheless making real progress."  The SRO further noted that, within the ADL skills domain, A.P. had learned to brush her hair and wash her face with only verbal support.  The SRO found that the hearing record did not contain any information regarding how A.P.'s one-to-one instruction and related services were modified for remote delivery, as opposed to in-person delivery.  Accordingly, the SRO found Plaintiffs' placement of A.P. in Keswell's remote program for the entire 2020-2021 school year to be inappropriate.  Finally, the SRO found that the equitable considerations of the case favored Plaintiffs, and that "the district does not contend otherwise."

On September 3, 2021, Plaintiffs initiated this action to appeal the SRO's findings with respect to the 2020-2021 school year.  The instant motions followed.

## III.   STANDARD

A motion for summary judgment in the IDEA context is "in substance an appeal from an administrative determination, not a summary judgment motion."  *C.S.*, 990 F.3d at 165 (internal quotation marks omitted).  "The standard of review requires a more critical appraisal of the agency determination than clear-error review but nevertheless falls well short of complete *de novo* review."  *C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 77 (2d Cir. 2014) (internal quotation marks omitted).  In reviewing an SRO's decision, a district court determines whether that decision is supported by "the preponderance of the evidence, taking into account the evidence in the administrative record and any further evidence presented before the District

11

Court by the parties." *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 367 (2d Cir. 2006) (internal quotation marks omitted); *accord A.U. et al. v. N.Y.C. Dep't of Educ.*, No. 15 Civ. 6777, 2016 WL 4508454, at *7 (S.D.N.Y. Aug. 25, 2016). "[C]ourts must give due weight to the state administrative proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *C.S.*, 990 F.3d at 165 (internal quotation marks omitted). Conclusions of law are not accorded any deference. *Id.* "Where an IHO and SRO reach conflicting conclusions, a court must defer to the SRO's decision on matters requiring educational expertise unless it concludes that the decision was inadequately reasoned, in which case a better-reasoned IHO opinion may be considered instead." *Id.* (internal quotation marks omitted). In deciding how much deference to accord the IHO and SRO, a reviewing court may take into account "whether the decision being reviewed is well-reasoned, and whether it was based on substantially greater familiarity with the evidence and the witnesses than the reviewing court." *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 189 (2d Cir. 2012) (internal quotation marks omitted); *accord J.S. v. N.Y.C. Dep't of Educ.*, 648 F. App'x 96, 99 (2d Cir. 2016). "The deference owed depends on both the quality of the opinion and the court's institutional competence." *C.F.*, 746 F.3d at 77. The Court should not "substitute its subjective assessment for that of the State" in conducting its own "totality of the circumstances analysis." *W.A.*, 927 F.3d at 149.

## IV.   DISCUSSION

There is no dispute that Defendant failed to offer a FAPE. The dispute is whether Keswell's remote learning program was an appropriate placement for the 2020-2021 school year. Plaintiffs are entitled to partial reimbursement of tuition paid for the 2020-2021 academic year for the reasons discussed below.

"Where an IHO and SRO reach conflicting conclusions, a court must defer to the SRO's decision on matters requiring educational expertise unless it concludes that the decision was inadequately reasoned, in which case a better-reasoned IHO opinion may be considered instead." *C.S.*, 990 F.3d at 165 (internal quotation marks omitted).  Although "the question of whether a private school placement provided special education services is precisely a question on which we defer to educational experts," such deference is not required if the decision was inadequately reasoned, *W.A.*, 927 F.3d at 147, and less deference is warranted "when the district court has before it additional evidence that was not considered by the state agency."  *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 244 (2d Cir. 2012); *accord Bd. of Educ. of Wappingers Cent. Sch. Dist. v. D.M.*, 831 F. App'x 29, 32 (2d Cir. 2020) (summary order).  Conclusions of law are not accorded any deference.  *Id.*  Here, the SRO's decision is entitled to less deference because the SRO did not have the report showing A.P.'s substantial progress from July 2020 through June 2021 (the "June 2021 Progress Report"), and the SRO's decision was inadequately reasoned.

Under the *Burlington/Carter* test, the private school placement "must be reasonably calculated to enable the child to receive educational benefits," *W.A.*, 927 F.3d at 146, "such that the placement is likely to produce progress, not regression."  *T.K. v. N.Y.C. Dep't. of Educ.*, 810 F.3d 869, 877 (2d Cir. 2016) (internal quotation marks omitted).  In making this determination, courts "consider the totality of the circumstances in determining whether the placement reasonably serves a child's individual needs."  *W.A.*, 927 F.3d at 146. (internal quotation marks omitted).  "Grades, test scores, and regular advancement may constitute evidence that a child is receiving educational benefit . . ."  *Id.* (internal quotation marks omitted).  "The test for the private placement is that it is appropriate, and not that it is perfect."  *T.K.*, 810 F.3d at 877-78 (internal quotation marks omitted).  "Parents bear a lower burden to demonstrate the

appropriateness of a private placement than school districts do to demonstrate the provision of a FAPE because parents are not barred from reimbursement where a private school they choose does not meet the IDEA definition of a FAPE." *Id.* at 878 (internal quotation marks omitted).

Evidence of progress is persuasive but not alone dispositive of whether a placement is appropriate. *See FB v. N.Y.C. Dep't of Educ.*, 132 F. Supp. 3d 522, 555 (S.D.N.Y. 2015) (quoting *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 115 (2d Cir. 2007) ("[S]uch progress does not by itself demonstrate that a private placement was appropriate."). The June 2021 Progress Report, which the SRO did not have and did not consider, shows remarkable progress: A.P. achieved eighty objectives for the school year, exceeding the number of objectives she met during the previous year, the vast majority of which involved live instruction for eight hours per day. Notably, the June 2021 Progress Report showed improvement in a number of areas the SRO highlighted as challenging for A.P. For instance, A.P. exhibited improvement in maladaptive behaviors, an area that the SRO noted "interfered with her acquisition of new skills" -- with only three instances of head hitting, three instances of head banging and no hair-pulling, as compared to ninety-two instances, fifty-six instances and thirteen instances, respectively, for the 2019-2020 school year. The length of her longest tantrum was almost half of what it was the previous year. A.P. demonstrated substantial progress in other behavioral skills -- there were no instances of dropping to the ground, out of seat behavior, body tensing nor inappropriate self-touching. A.P. also showed improvement in Activities of Daily Living, an area that was highlighted by the SRO, as she met eight of eighteen goals by June 2021, including using her hands to manipulate objects. This progress, which was not before the SRO, supports a finding that Keswell's remote program was an appropriate placement.

In part because the SRO did not consider the June 2021 Progress Report, the SRO's decision was not supported by the preponderance of the evidence and did not fully address the totality of circumstances in determining whether Keswell's remote program was reasonably calculated to enable M.P. to receive educational benefits. *W.A.*, 927 F.3d at 146. Based on testimony that A.P. required "full adult support . . . throughout the day," and that A.P. ordinarily would have received eight hours of in-person instruction at Keswell, the SRO concluded that "it is difficult to envision, without further evidence, how the remote program was appropriate for the student." But the appropriateness of A.P.'s remote learning should not be based on what she would have received in Keswell's in-person program for eight hours a day, as the test is whether placement is appropriate, "not that it is perfect." *T.K.*, 810 F.3d at 877-78. The three hours of remote instruction A.P. received "addressed her needs[, albeit] to a limited extent," as the IHO found. *See, e.g.*, *Bd. of Educ. of Wappingers Cent. Sch. Dist. v. D.M.*, No. 19 Civ. 1730, 2020 WL 508845 (S.D.N.Y. Jan. 30, 2020) (ruling that the private school "although not ideal, was an appropriate unilateral placement" even though it did not address all "critical elements" for the student), *aff'd*, 831 F. App'x 29 (2d Cir. 2020) (summary order). The tailored one-to-one instruction, with M.P.'s supervision during the three hours of remote sessions in which A.P. participated, entitles Plaintiffs to partial reimbursement in the form of 3/8 of the daily rate based on the yearly tuition of $164,0000 at Keswell, as the HSO found.

The SRO did not adequately consider the totality of the circumstances in determining whether Keswell reasonably served A.P.'s individualized needs. Although the SRO took into account "the unique circumstances leading to the closing of the school for in-person instruction in March, 2020" in concluding that Keswell was an appropriate placement for the 2019-2020 school year, the SRO did not similarly consider the impact of the COVID-19 pandemic for the

2020-2021 school year, other than to note that A.P. had continued remote learning at the parent's election.  The SRO put undue weight on the fact that A.P.'s remote learning was voluntary and that she would have received more live instruction if she had attended school in person.  The SRO did not consider that, when A.P.'s parents made the decision to continue remote learning, that (i) no vaccines were widely available, (ii) both parents had only recently recovered from COVID-19 themselves after being bedridden for several weeks with severe symptoms, (iii) M.P. has a number of pre-existing conditions, (iv)  more children on the autism spectrum die from COVID-19 than other children and (iv) A.P. may have been at a heightened risk due to her tendencies to put non-food objects in her mouth and inability to wear a mask.  Appropriateness of a unilateral placement is based on the totality of the circumstances, rather than an exclusive set of factors, and such placement "is only appropriate if it provides education instruction specially designed to meet the *unique* needs of a handicapped child."  *W.A.*, 927 F.3d at 146 (internal quotation marks omitted).  Here, the totality of the circumstances include considerations of which the SRO was unaware or gave no weight -- the June 2021 Progress Report and the serious risks posed by the global pandemic to A.P. and her family.  *See Frank G*, 459 at 372 (stating that parents are not required "to jeopardize their child's health and education . . . in order to qualify for the right to seek tuition reimbursement").

The three hours of remote instruction were reasonably calculated to enable A.P. to receive educational benefits.  The SRO determined that the hearing record lacked information "concerning how the one-to-one instruction and related services were modified for remote, as opposed to in-person delivery."  Defendant identifies portions of the IEP and progress reports that were not designed for remote instruction, such as completing an obstacle course and participating in group sports.  First, there was evidence in the record about how the program was

modified for remote learning.  Keswell's associate director testified that A.P.'s mother was present during the sessions, which continued her one-to-one instruction, and explained how the instructor, parent and A.P. together sought to accomplish A.P.'s goals in the IEP by, for example, the mother holding up an answer to a math problem A.P. completed.  Second, it is clear that A.P. was able to engage in certain physical and interactive activities through the remote learning process, and even make progress in those activities.  For instance, the June 2021 Progress Report states that she engaged in physical education by doing yoga and exercises provided by the occupational therapist, A.P. became toilet trained, mastered brushing her hair with visual support and wiping her face without visual support, and mastered allowing her sibling to manipulate toys from her play bin.  Third, the fact that certain activities, such as group volleyball, may not have been feasible during remote learning does not weigh heavily towards finding that the remote learning A.P. engaged in during the live sessions was not appropriate; group activities were curtailed even for in-person education at many schools during the pandemic, and the parent "need not show that a private placement provides every special service necessary to maximize the child's potential."  *Frank G*, 459 F.3d at 364; *accord Fragnito ex rel. L.F. v. Bd. of Educ. of the Suffern Cent. Sch. Dist.*, No. 19 Civ. 1598, 2020 WL 4194804, at *9 (S.D.N.Y. July 21, 2020).

"[E]ven if a plaintiff establishes a right to reimbursement under the IDEA, courts retain discretion to reduce the amount of a reimbursement award if the equities so warrant."  *E.M. v. N.Y.C. Dep't of Educ.*, 758 F.3d 442, 443 (2d Cir. 2014) (internal quotation marks omitted).  In making this determination courts consider a number of factors, including "whether plaintiff's unilateral withdraw of her child from the public school was justified, whether plaintiff provided the Department with adequate notice of the withdrawal, [and] whether the amount of private-

school tuition was reasonable . . ."  *Id.*  Because the SRO concluded that Keswell was not an appropriate placement for the 2020-2021 school year, the portion of the decision relating to equitable considerations addressed only the 2019-2020 school year.  Defendant does not appear to dispute that equitable considerations favor Plaintiffs for the 2020-2021 school year.

As discussed above, the preponderance of the evidence supports the IHO's finding that the remote live sessions A.P. participated in for three hours per day was appropriate, and she is therefore entitled to partial reimbursement of the tuition.  The IHO correctly determined that the equities favored Plaintiffs because there was no evidence that M.P. failed to cooperate with Defendant and M.P. gave adequate notice of her decision to enroll A.P. at Keswell for the 2020-2021 school year and would seek reimbursement from Defendant.

## V.    CONCLUSION

For the foregoing reasons, Defendant's motion is denied, and Plaintiffs' motion is granted in part.  Plaintiffs are entitled to partial tuition as set forth in the IHO's decision.  The Clerk of Court is respectfully directed to close all outstanding motions and terminate the case.

Dated:  September 8, 2022
New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**